**O'BRIEN, City Attorney, et al., Appellees and Cross–Appellants,**

**v.**

**COLUMBUS SOUTHERN POWER COMPANY**
**et al., Appellants and Cross–Appellees.**

[Cite as *O'Brien v. Columbus S. Power Co.* (1992), 73 Ohio App.3d 355.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–167 and 92AP–169.

Decided March 24, 1992.

*Ronald J. O'Brien,* City Attorney; *Chester, Hoffman, Willcox & Saxbe* and *John W. Bentine; Emens, Hurd, Kegler & Ritter, Richard P. Rosenberry* and *Samuel C. Randazzo,* for appellees and cross-appellants city of Columbus and Marvin E. Rothhaar.

*William A. Spratley,* Consumers' Counsel, and *David C. Bergmann,* for appellee and cross-appellant Ohio Consumers' Counsel.

*Porter, Wright, Morris & Arthur, Samuel H. Porter, Kathleen McManus Trafford* and *Margaret A. Mattimoe; Edward J. Brady* and *Marvin I. Resnik,* for appellant and cross-appellee Columbus Southern Power Company.

*Lee I. Fisher,* Attorney General, and *Nancy J. Miller,* for appellants and cross-appellees state of Ohio and Ohio Attorney General.

*David L. Pemberton,* for *amicus curiae* Ohio Gas Association.

*Fuller & Henry, Louis E. Tosi* and *Michael E. Born,* for *amicus curiae* Ohio Electric Utility Institute.

*Schneider & Prohaska* and *J. Raymond Prohaska,* for *amicus curiae* Ohio Telephone Association.

---

TYACK, Judge.

On April 2, 1991, Columbus Southern Power Company ("Columbus Southern") filed an application with the Public Utilities Commission of Ohio ("PUCO") requesting a significant increase in the rates Columbus Southern charges its customers for electrical service. When the better part of two hundred seventy-five days had elapsed, Columbus Southern filed with PUCO an undertaking, pursuant to R.C. 4909.42, with the intention that as of the two hundred seventy-sixth day following the filing of the application, Columbus Southern would begin collecting the rate requested in the application. R.C. 4909.42 reads:

"If the proceeding on an application filed with the public utilities commission under section 4909.18 of the Revised Code by any public utility requesting an increase on any rate, joint rate, toll, classification, charge, or rental or requesting a change in a regulation or practice affecting the same has not been concluded and an order entered pursuant to section 4909.19 of the Revised Code at the expiration of two hundred seventy-five days from the date of filing the application, the proposed increase shall go into effect upon the filing of an undertaking by the public utility. The undertaking shall be filed with the commission and shall be payable to the state for the use and benefit of the customers affected by the proposed increase or change.

"The undertaking must be signed by two of the officers of the utility, under oath, and must contain a promise to refund any amounts collected by the utility over the rate, joint rate, toll, classification, charge, or rental, as determined in the final order of the commission. All refunds shall include interest at the rate stated in section 1343.03 of the Revised Code. The refund shall be in the form of a temporary reduction in rates following the final order of the commission, and shall be accomplished in such manner as shall be prescribed by the commission in its final order. The commission shall exercise continuing and exclusive jurisdiction over such refunds.

"If the public utilities commission has not entered a final order within five hundred forty-five days from the date of the filing of an application for an increase in rates under section 4909.18 of the Revised Code, a public utility shall have no obligation to make a refund of amounts collected after the five

hundred forty-fifth day which exceed the amounts authorized by the commission's final order.

"Nothing in this section shall be construed to mitigate any duty of the commission to issue a final order under section 4909.19 of the Revised Code."

In response to Columbus Southern's undertaking, PUCO issued an entry indicating its intention to require customer-specific refunds for any sums collected by Columbus Southern in excess of the rate ultimately allowed.

Before the higher rate could actually be collected, the City Attorney of Columbus, the Ohio Consumers' Counsel, and an individual customer of Columbus Southern, Marvin E. Rothhaar, filed a lawsuit in the Court of Common Pleas of Franklin County, Ohio, seeking to bar collection of the higher rate on the theory that R.C. 4909.42 was unconstitutional. Specifically, the lawsuit alleged that the statute denied due process of law, denied equal protection of the laws, and embodied an unconstitutional delegation of legislative power.

A judge of the court of common pleas restrained collection of the increased rates while the litigation was pending.

Columbus Southern sought a writ of prohibition in the Supreme Court of Ohio, but the writ was denied. See *State ex rel. Columbus S. Power Co. v. Sheward* (1992), 63 Ohio St.3d 78, 585 N.E.2d 380.

The issues were subsequently presented to the trial court based upon stipulated facts and, on February 7, 1992, the assigned judge filed a decision and entry which indicated that R.C. 4909.42 violated due process of law but not equal protection. The court also found that R.C. 4909.42 embodied an unconstitutional delegation of legislative power. The ruling as to due process was based upon a theory that because R.C. 4909.42 required overpayments to be refunded solely through a reduction in rates following the final order of PUCO, those persons who discontinued electrical service would be deprived of property without due process of law. The ruling as to the alleged delegation of legislative power centered around a theory that the legislature had impermissibly delegated the determination of electrical rates to the utility itself in those circumstances in which PUCO did not rule on a rate application in two hundred seventy-five days or less. The trial court based its finding as to equal protection upon its conclusion that the statute did not involve classification of consumers which lacked a reasonable basis.

Pursuant to its rulings on the constitutionality of R.C. 4909.42, the trial court permanently enjoined Columbus Southern from implementing rate increases as authorized by the statute.

Columbus Southern has timely appealed, assigning four errors for our consideration:

"I. The trial court erred in concluding that R.C. 4909.42 constitutes an unlawful delegation of legislative power.

"II. The trial court erred in concluding that the refund provisions of R.C. 4909.42 constitute a taking of property without just compensation and deprive public utility customers of property without due process of law.

"III. The trial court erred in refusing to perform its duty to apply all presumptions and pertinent rules of construction to uphold R.C. 4909.42.

"IV. The trial court erred in concluding that the city of Columbus and the Consumers' Counsel had standing to assert due process or equal protection claims."

The state of Ohio and the Ohio Attorney General also appealed, assigning two errors for our consideration:

"I. The trial court erred in holding that the Public Utilities Commission of Ohio lacks authority, pursuant to R.C. 4909.42, to ensure that all utility customers receive a refund of utility payments made, pending a final order of the Commission, in excess of the amount ultimately authorized by the Commission in its final order, and that, therefore, R.C. 4909.42 authorizes a taking of property without compensation or due process of law.

"II. The trial court erred in its ruling that R.C. 4909.42 delegates legislative authority to a regulated utility."

The City Attorney for Columbus, the Ohio Consumers' Counsel, and the named consumer have filed a cross-appeal, assigning a single additional error for our consideration:

"The trial court erred by concluding that section 4909.42, Ohio Revised Code, did not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution."

In construing R.C. 4909.42, we are required to consider R.C. 1.47, which reads:

"In enacting a statute, it is presumed that:

"(A) Compliance with the constitutions of the state and of the United States is intended;

"(B) The entire statute is intended to be effective;

"(C) A just and reasonable result is intended;

"(D) A result feasible of execution is intended."

In addition, we are bound by R.C. 1.50, which provides:

"If any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

■ Thus, if we are able to construe a statute, or significant portions of it, in such a way as to comply with applicable requirements of constitutional law, we are bound to do so.

■ The portion of R.C. 4909.42 which was deemed by the trial court to be objectionable for purposes of due process of law is that portion which mandates refunds to be " * * * in the form of a temporary reduction in rates following the final order of the commission * * *." If this particular provision is deleted or severed-off from the balance of R.C. 4909.42, the statute would require: "The refund * * * shall be accomplished in such manner as shall be prescribed by the commission in its final order." Thus, if the phrase deemed problematic is severed from the statute, the authority to determine the most reasonable way to make refunds to consumers would be in the hands of the agency which is in the best position to make that determination, namely PUCO.

The Supreme Court of the United States has provided guidance for appellate courts addressing the question of when a portion of a statute could or should be severed from the remaining portion in order to preserve some of the statute from being constitutionally infirm. Thus, in *Regan v. Time, Inc.* (1984), 468 U.S. 641, at 652–653, 104 S.Ct. 3262, at 3268–3270, 82 L.Ed.2d 487, at 496–498, the Supreme Court noted:

" * * * A ruling of unconstitutionality frustrates the intent of the elected representatives of the people. Therefore, a court should refrain from invalidating more of the statute than is necessary. As this Court has observed, 'whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.' *El Paso & Northeastern R. Co. v. Gutierrez*, 215 U.S. 87, 96 [30 S.Ct. 21, 24, 54 L.Ed. 106, 111] * * * (1909). Thus, this Court has upheld the constitutionality of some provisions of a statute even though other provisions of the same statute were unconstitutional. *Buckley v. Valeo*, 424 U.S. 1, 108 [96 S.Ct. 612, 677, 46 L.Ed.2d 659, 738] * * * (1976) * * *."

The Supreme Court of Ohio has provided us the express test for when severability can occur in *State ex rel. King v. Rhodes* (1967), 11 Ohio St.2d 95, at 101, 40 O.O.2d 109, at 112–113, 228 N.E.2d 653, at 657:

"The test of severability is whether the remaining parts of the article, standing alone and without reference to the unconstitutional sections, can be effective and operable. * * * "

This test has been cited with approval recently in *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 543 N.E.2d 1169.

Since construing R.C. 4909.42 to allow PUCO discretion in determining the form of refunds plus interest leaves a fully effective and operable statute, severance is sanctioned by the applicable case law.

We do find, as did the trial court, that R.C. 4909.42 as currently written violates due process of law as to those consumers who, without possibility of a refund, are temporarily assessed unnecessarily high utility rates through state action (the statute) and state inaction (PUCO's delay). Such consumers have their property in the form of money taken with no reasonable recourse since the statute as written expressly forbids PUCO from refunding their overpayments unless, at some time in the future, the individuals affected are customers of the specific utility which has collected funds in excess of the rate ultimately approved by PUCO.

We reach our finding as to the due process problems based upon a significant line of federal cases in which governmental entities have authorized private parties to take personal property of customers or patrons only to have the "private" action constitute a violation of due process. The appellees have specifically cited *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 432, 102 S.Ct. 3164, 3174, 73 L.Ed.2d 868, 880, fn. 9, in which the Supreme Court of the United States noted that a taking " * * * authorized by state law is a taking without regard to whether the state, or [a third party] authorized by the state is the occupant. * * * " This quote is a relatively recent and concise statement of what seems to have been the underlying rationale in earlier cases such as *Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; and *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

■ Since the taking authorized by statute is a taking for purposes of a due process analysis, the remaining question is what remedy is provided for an individual whose property is taken. Unfortunately, R.C. 4909.42 as written provides no remedy whatsoever and, in fact, makes any remedy impossible for

those who do not continue as customers of the specific utility—hence, our finding of a due process deprivation for one class of current customers.

However, if PUCO is not limited in its discretion to rate reductions only, this infirmity is removed. Therefore, we follow our express statutory duty pursuant to R.C. 1.50 and the applicable case law and sever off the offending phrase, "shall be in the form of a temporary reduction in rates following the final order of the commission, and" from R.C. 4909.42, leaving the discretion to PUCO to determine the methodology for refunds.

Thus, the second and third assignments of error submitted by appellant Columbus Southern and the first assignment of error submitted by the state of Ohio and the Ohio Attorney General are sustained.

■ Given our holding as to the assignments of error listed above, the principal remaining question presented by appellant Columbus Southern is whether or not a legislative enactment which permits a public utility for a period of time to collect a rate for which it has filed a lawful application, subject to an obligation to refund to consumers any excess funds collected, somehow constitutes an unconstitutional delegation of legislative power. We hold that R.C. 4909.42 as construed above does *not* embody an unconstitutional transfer of legislative power and, therefore, sustain Columbus Southern's first assignment of error and the second assignment of error of the state of Ohio and the Ohio Attorney General.

To explain, R.C. 4909.42 is only one part of the total legal structure within which utility rates are determined in Ohio. Utilities, because they are government-sanctioned monopolies, are very closely regulated. Few other entities are told what they can charge consumers for their products or services. The government, the utility and consumers all have a vested interest in the ongoing health of the utility, so provisions are made for such rate increases as are necessary to maintain that economic health. The complexity of a rate application and the proceedings which flow from the filing for a rate increase is almost mind boggling to the average consumer of electric power. All involved are best served if careful and thoughtful consideration is given to the rate application after a full development of the facts. This consideration cannot occur overnight and can reasonably be foreseen to take over two hundred seventy-five days on occasion.

Without R.C. 4909.42, the rate-making structure would not permit a utility to increase its rates while an application is pending unless, pursuant to R.C. 4909.16, PUCO deems the increase " * * * necessary to prevent injury to the

business or interests of the public or of any public utility of this state in case of any emergency to be judged by the commission * * *."

R.C. 4909.16 presents a "Catch–22" situation for the utility. If PUCO is bogged down in bureaucracy and work, the utility must give it more work in hopes of establishing an emergency in order to justify even a partial interim rate increase. Thus, PUCO must be diverted from attending to the initial rate application in order to address the related issue of whether the current rates have caused a crisis worthy of being considered an emergency for the utility.

The legislature has provided in R.C. 4909.42 an alternative solution which minimizes the bureaucratic problems for PUCO but places an additional burden on the utility. If the utility invokes R.C. 4909.42, the utility does so at the risk of incurring the cost of a full refund plus interest. The increased rate may not generate sufficient income to cover the cost of processing the refunds, so invoking the new rate may actually cost the utility money as opposed to increasing its profits. This may partially explain why the present case represents only the second time in recent history that R.C. 4909.42 has been invoked by a utility with a pending rate application.

The legislature's treatment of the problem of determining utility rates, including the first two paragraphs of R.C. 4909.42, is reasonable and, as indicated above, does not constitute an improper delegation of legislative power. In fact, the provision concerning an interim increase in rates, to be adjusted when the rates are finally set, does not delegate any legislative power to the utility. The General Assembly has enacted all of the necessary provisions for establishment of utility rates and has provided PUCO with authority for handling the rate case that proceeds in a slower manner than contemplated. The fact that an interim increase may be initiated by a utility is not a delegation of authority to set its own rates. We note that a large quantity of sworn evidence must be submitted by the utility in support of its rate application which provides some safeguard against arbitrary submissions. Furthermore, interest is charged at the statutory rate (now ten percent) on any amounts collected which must later be refunded. The ultimate payment of utility bills depends solely on the rate found to be proper by PUCO, not upon any power provided to the utility.

We expressly do not address the problems presented by the third paragraph of R.C. 4909.42, wherein the legislature authorizes a utility to collect excess utility rates with no requirement for refund in situations where a rate application has been pending for more than five hundred forty-five days. Hopefully, this problem will never be the subject of an actual case or controversy because PUCO will never need almost eighteen months to address a rate application.

Also, given our treatment of the due process problems set forth above, any potential equal protection difficulties are fully addressed. Since all consumers are contemplated as receiving full refunds, no suspect or arbitrary classification occurs. The fact that those who are ongoing customers of a utility may receive their refunds through reduced utility bills, while those who discontinue service may receive a refund check, does not mean that an irrational or unreasonable classification has occurred. Hence, no equal protection problems are present in R.C. 4909.42, as we construe it. The assignment of error of the cross-appellants is overruled.

■ The final error assigned by Columbus Southern addresses the question of standing as to appellees city of Columbus and Ohio Consumers' Counsel to bring this litigation. As to this issue, we note that no party contests the standing of Marvin Rothhaar, the individual consumer who is a named party, given the fact that he apparently will be discontinuing his service from Columbus Southern before receiving any potential refund. His situation, in and of itself, places the issues before the court for resolution.

The City Attorney of Columbus has standing as a result of a city ordinance which calls upon him to represent consumers living in the city of Columbus on utility matters. See Columbus City Code 133.02, which states:

"To help insure that the citizens of Columbus have an adequate supply of energy and adequate telephone service, each at a fair price, the Columbus City Attorney is hereby authorized to take appropriate action with regard to regulation of privately owned public utilities. The City Attorney may appear as a named party for the City and its agencies, and residential, commercial and industrial consumers within the City limits before the Public Utilities Commission of Ohio, Federal Energy Regulatory Commission, courts, boards, commissions and any other regulatory bodies."

The Ohio Consumers' Counsel also has standing. When the legislature created the Office of Consumers' Counsel, the legislature clearly contemplated a broad range of powers for the Consumers' Counsel in order that the interests of consumers of utility services be properly represented. Thus, in R.C. 4911.02(B), the powers of the Consumers' Counsel are set forth as follows:

"(1) The counsel may sue or be sued and has the powers and duties granted him under this chapter, and all necessary powers to carry out the purposes of this chapter.

"(2) Without limitation because of enumeration, the counsel:

"(a) Shall have all the rights and powers of any party in interest appearing before the public utilities commission regarding examination and cross-examination of witnesses, presentation of evidence, and other matters;

"(b) May take appropriate action with respect to residential consumer complaints concerning quality of service, service charges, and the operation of the public utilities commission;

"(c) May institute, intervene in, or otherwise participate in proceedings in both state and federal courts and administrative agencies on behalf of the residential consumers concerning review of decisions rendered by, or failure to act by, the public utilities commission;

"(d) May conduct long range studies concerning various topics relevant to the rates charged to residential consumers."

R.C. 4911.02(B)(1) expressly grants the right to the Consumers' Counsel to file litigation such as in the present case.

Therefore, the fourth assignment of error submitted by Columbus Southern is overruled.

Thus, the first, second and third assignments of error of appellant Columbus Southern are sustained, as are the first and second assignments of error of appellants the state of Ohio and the Ohio Attorney General. The fourth assignment of error of appellant Columbus Southern is overruled. The assignment of error of the cross-appellants is also overruled.

As a result of the foregoing, the injunction issued by the trial court is ordered to be vacated. The judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, P.J., and McCORMAC, J., concur.