THE STATE EX REL. MIRLISENA *v.* HAMILTON COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Mirlisena v. Hamilton Cty.
Bd. of Elections* (1993), 67 Ohio St.3d 445.]

(No. 93–1435—Submitted September 13, 1993—Decided September 14, 1993.)

This cause originated in this court on the filing of a complaint for a writ of mandamus and was considered in a manner prescribed by law. Upon consideration of relator's request for oral argument and the motion of Hamilton County Conservative Forum for leave to file brief *amicus curiae,*

IT IS ORDERED by the court that the request for oral argument be, and the same is hereby, denied.

IT IS FURTHER ORDERED by the court that the motion for leave to file brief *amicus curiae* be, and the same is hereby, granted.

IT IS FURTHER ORDERED by the court that a writ be, and the same is hereby, denied, consistent with the opinion to follow.

MOYER, C.J., WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

A.W. SWEENEY, DOUGLAS and PFEIFER, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent from the judgment of the majority. For the reasons which follow, I believe relator's request for a writ should be granted.

At an election held in the city of Cincinnati on November 5, 1991, electors voted to approve Issues 4 and 5 as amendments to the Cincinnati City Charter. These issues appeared on the ballot in the following form:

### Issue 4

"Shall the proposed amendment to the Charter of the City of Cincinnati to provide that the people shall have the right to nominate, vote for and elect any citizen who is registered to vote in the city to be a member of council *without restriction relating to the citizen's prior experience as a member of council* by adding new Section 1A to Article IX be approved?" (Emphasis added.)

### Issue 5

"Shall the proposed amendment to the Charter of the City of Cincinnati to provide that no person shall hold the office of member of the council for a period

longer than four consecutive two year terms of the council unless a period of at least two consecutive two year terms of the council has intervened without such person serving on the council; that the provisions of this amendment shall apply commencing with the nominations for the election for the council term commencing December 1, 1993, *and that consecutive terms of service on the council to which members were elected prior to December 1, 1993 shall be counted in determining eligibility for office under this section;* and to give effect to the above provisions by repealing existing Section 2 of Article IX, and adopting new Sections 2 and 12 of Article IX be approved?" (Emphasis added.)

These two amendments, on their face, appear to some extent to be internally contradictory. There is, apparently, no provision in the Cincinnati City Charter dealing with the problem of conflicting charter provisions, *i.e.,* whether both are void and/or whether the issue receiving the larger vote is given preference. Accordingly, in deciding the question presented to us, I would follow that body of law that we are required to follow when we construe statutes.

It is the duty of any court, when construing a statute, to give effect to all of the pronouncements of the statute and to render the statute compatible (to harmonize) with other and related enactments whenever and wherever possible. Where it is not possible to totally harmonize conflicting provisions we are, pursuant to R.C. 1.50, commanded that "[i]f any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, *the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or* application, *and to this end the provisions are severable.*" (Emphasis added.)

We have followed this procedure in a number of cases. In *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 149, 580 N.E.2d 767, 770, a majority of this court said that "[a]ccordingly, we sever the offending portion of the bill * * * to cure the defect and save the portions * * * which do relate to a single subject. * * *" In *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 121, 543 N.E.2d 1169, 1175, we said that "[w]e do not find it necessary to strike the entire 1976 amendment to R.C. 4123.59(B). *Indeed, it is our obligation to preserve as much of the General Assembly's handiwork as is constitutionally permissible.* * * *" (Emphasis added.) We also said: "Accordingly, we find these words to be violative of the mandate that no person shall be denied equal protection of the laws and we order that they be severed and stricken from the statute. *The remainder of the statute, at least as applied to these facts, can be effective and operable.*" (Emphasis added.) *Id.* at 122, 543 N.E.2d at 1175. In *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 164, 28 OBR 250, 256–257, 503 N.E.2d 136, 142, the court said that " * * * we find that the unconstitutional portions of R.C. 4509.101 are indeed severable from the

rest of the statute. While the General Assembly may wish to amend portions of the statute given our holding herein, we do not believe that the unconstitutional parts of the statute are so interconnected with the general scope of the whole statute as to make it impossible to give effect to the apparent intention of the legislature with the offending portions removed. Thus, * * * we find that the unconstitutional portions of R.C. 4509.101 are severable from the remainder of the statute." In *Livingston v. Clawson* (1982), 2 Ohio App.3d 173, 2 OBR 189, 440 N.E.2d 1383, learned Judge James A. Brogan of the Second District Court of Appeals, writing for the court, laid out a clear and helpful roadmap on the issue of "severability." Thus, given the foregoing, I would determine the viability of Issues 4 and 5 by applying appropriate constitutional tests and then severability in order to harmonize the issues and preserve as much of the voters' handiwork as is constitutionally permissible.

As some would have us believe, this case is not about the advisability or nonadvisability of term limits for Cincinnati city councilpersons. The people of Cincinnati have resoundingly spoken on that issue and their judgment, at least in this forum, should not be disturbed. In passing Issue 5, however, the voters made the term limitation retroactive. This, I believe, they could not constitutionally do.

Section 28, Article II of the Ohio Constitution provides, in part, that "[t]he general assembly shall have no power to pass retroactive laws * * *." Since I have indicated that I would apply, absent any direction from the Cincinnati City Charter, the general law of statutory interpretation in construing Issues 4 and 5, I would likewise apply the Ohio constitutional provision as to retroactive legislation. I am buttressed, I believe, in doing so by the decision of the United States Supreme Court, *Citizens Against Rent Control v. Berkeley* (1981), 454 U.S. 290, 295, 102 S.Ct. 434, 437, 70 L.Ed.2d 492, 498, where the court said that "the voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation."

Issue 5 provides, in part, "that consecutive terms of service on the council to which members were elected *prior* to December 1, 1993 shall be counted in determining eligibility for office under this section * * *." (Emphasis added.) This is clearly an enactment which is meant to have retroactive effect. Such an enactment is proscribed by Section 28, Article II of the Ohio Constitution.

If we sever this unconstitutional portion of Issue 5, what remains from Issue 5 are the provisions that no person can serve more than four consecutive two-year terms on council; that any person having served such a number of terms must sit out (not be eligible to run) for two consecutive two-year terms before again being eligible to seek office as a councilperson; and that these provisions be effective commencing December 1, 1993. This then permits us to harmonize Issue 5 with

Issue 4 by holding that Issue 4's language, " * * * without restriction relating to the citizen's *prior* experience as a member of council * * * " (emphasis added), pertains only to that service occurring before December 1, 1993 and any service thereafter is governed by the remaining provisions of Issue 5. This construction follows the law by severing the unconstitutional portion of Issue 5, and harmonizing Issue 5 with Issue 4 and giving effect to both.

While there may be (and are) other reasons to reach this, what I believe to be, mandated result, for the purpose of deciding the question before us, it is not necessary to delineate them. Suffice to say, this entire controversy is one wrapped in politics and in that regard I am reminded of what Fiorello La Guardia, an American lawyer, politician and mayor of New York City once said: "Politics is very much like taxes—everybody is against them, or everybody is for them as long as they don't apply to him." [1] Much the same could be said of the matter presented by this case. But having said that, we should also remember what Dwight David Eisenhower, the thirty-fourth President of the United States, once said: "Politics is a profession; a serious, complicated and, in its true sense, a noble one." [2]

I would strike the unconstitutional provision of Issue 5, and, in one of our finest traditions, let the voters decide who in Cincinnati should be nominated and elected to their city council. Because the majority does not do so, I must respectfully dissent.

PFEIFER, J., dissenting. This case involves Cincinnati City Councilman John Mirlisena's desire to file petitions to run in the November 2, 1993 councilmanic election. His ability to seek reelection is clouded by a pair of conflicting charter amendments regarding term limitations passed by the citizens of Cincinnati in their last general election. One amendment, Issue 5, states that a council member may serve a maximum of four consecutive two-year terms, and must sit out two elections before serving again. However, the other amendment, Issue 4, provides:

"The people shall have the right to nominate, vote for and elect any citizen who is registered to vote in the city to be a member of council without restriction relating to the citizen's prior experience as a member of council."

In other words, Issue 4 provides that there should be no term limits for council members. It appears that when asked whether they preferred term limits for

---

1. Bradley, Daniels & Jones, The International Dictionary of Thoughts (J.G. Ferguson Pub. Co. 1969) 566.

2. *Id.* at 565.

council members the people of Cincinnati responded with a resounding "Maybe, maybe not!"

Since the amendments are in direct conflict, and because there is no specific guidance in the charter or in the Ohio Constitution as to what to do when city charter amendments so conflict, I would find both amendments void. Thus, since the charter lacks any effective term limitation provision, I would grant relator's writ and would allow him to file petitions to be placed on the November ballot.