The State ex rel. Mirlisena *v.* Hamilton County Board of Elections.

[Cite as *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597.]

(No. 93–1435—Submitted September 13, 1993—Decided September 14, 1993—Rehearing granted and writ allowed October 7, 1993—Opinion announced November 8, 1993.)

*Beckman, Weil, Shepardson & Faller* and *Peter L. Cassady,* for relator.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, *Philip L. Zorn, Jr.* and *James W. Harper,* Assistant Prosecuting Attorneys, for respondent.

*Taft, Stettinius & Hollister, Kim K. Burke* and *Mark G. Kobasuk,* urging denial of the writ for *amicus curiae,* Hamilton County Conservative Forum.

---

*Per Curiam.* At an election held in the city of Cincinnati on November 5, 1991, electors voted to approve Issues 4 and 5 as amendments to the Cincinnati City Charter. These issues appeared on the ballot in the following form:

### Issue 4

"Shall the proposed amendment to the Charter of the City of Cincinnati to provide that the people shall have the right to nominate, vote for and elect any citizen who is registered to vote in the city to be a member of council *without restriction relating to the citizen's prior experience as a member of council* by adding new Section 1A to Article IX be approved?" (Emphasis added.)

### Issue 5

"Shall the proposed amendment to the Charter of the City of Cincinnati to provide that no person shall hold the office of member of the council for a period longer than four consecutive two year terms of the council unless a period of at least two consecutive two year terms of the council has intervened without such person serving on the council; that the provisions of this amendment shall apply commencing with the nominations for the election for the council term commencing December 1, 1993, *and that consecutive terms of service on the council to*

*which members were elected prior to December 1, 1993 shall be counted in determining eligibility for office under this section;* and to give effect to the above provisions by repealing existing Section 2 of Article IX, and adopting new Sections 2 and 12 of Article IX be approved?" (Emphasis added.)

These two amendments, on their face, appear to some extent to be internally contradictory. There is, apparently, no provision in the Cincinnati City Charter dealing with the problem of conflicting charter provisions, *i.e.,* whether both are void and/or whether the issue receiving the larger vote is given preference. Accordingly, in deciding the question presented to us, we follow that body of law that we are required to follow when we construe statutes.

It is the duty of any court, when construing a statute, to give effect to all of the pronouncements of the statute and to render the statute compatible (to harmonize) with other and related enactments whenever and wherever possible. Where it is not possible to totally harmonize conflicting provisions we are, pursuant to R.C. 1.50, commanded that "[i]f any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, *the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.*" (Emphasis added.)

We have followed this procedure in a number of cases. In *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 149, 580 N.E.2d 767, 770, this court said that "[a]ccordingly, we sever the offending portion of the bill * * * to cure the defect and save the portions * * * which do relate to a single subject. * * *" In *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 121, 543 N.E.2d 1169, 1175, we said that "[w]e do not find it necessary to strike the entire 1976 amendment to R.C. 4123.59(B). *Indeed, it is our obligation to preserve as much of the General Assembly's handiwork as is constitutionally permissible. * * *"* (Emphasis added.) We also said: "Accordingly, we find these words to be violative of the mandate that no person shall be denied equal protection of the laws and we order that they be severed and stricken from the statute. *The remainder of the statute, at least as applied to these facts, can be effective and operable.*" (Emphasis added.) *Id.* at 122, 543 N.E.2d at 1175. In *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 164, 28 OBR 250, 256–257, 503 N.E.2d 136, 142, the court said that " * * * we find that the unconstitutional portions of R.C. 4509.101 are indeed severable from the rest of the statute. While the General Assembly may wish to amend portions of the statute given our holding herein, we do not believe that the unconstitutional parts of the statute are so interconnected with the general scope of the whole statute as to make it impossible to give effect to the apparent intention of the legislature with the offending portions removed. Thus, * * * we find that the unconstitutional

portions of R.C. 4509.101 are severable from the remainder of the statute." In *Livingston v. Clawson* (1982), 2 Ohio App.3d 173, 2 OBR 189, 440 N.E.2d 1383, learned Judge James A. Brogan of the Second District Court of Appeals, writing for the court, laid out a clear and helpful roadmap on the issue of "severability." Thus, given the foregoing, we determine the viability of Issues 4 and 5 by applying appropriate constitutional tests and then severability in order to harmonize the issues and preserve as much of the voters' handiwork as is constitutionally permissible.

Some would have us believe that this case is about the advisability or nonadvisability of term limits for Cincinnati city councilpersons. They are mistaken. The people of Cincinnati have resoundingly spoken on that issue and their judgment, at least in this forum, should not be disturbed. In passing Issue 5, however, the voters made the term limitation retroactive. This, we believe, they could not constitutionally do.

Section 28, Article II of the Ohio Constitution provides, in part, that "[t]he general assembly shall have no power to pass retroactive laws * * *." Since we have indicated that we will apply, absent any direction from the Cincinnati City Charter, the general law of statutory interpretation in construing Issues 4 and 5, we will likewise apply the Ohio constitutional provision as to retroactive legislation. We are buttressed in doing so by the decision of the United States Supreme Court, *Citizens Against Rent Control v. Berkeley* (1981), 454 U.S. 290, 295, 102 S.Ct. 434, 437, 70 L.Ed.2d 492, 498, where the court said that " * * * the voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation."

Issue 5 provides, in part, " * * * that consecutive terms of service on the council to which members were elected *prior* to December 1, 1993 shall be counted in determining eligibility for office under this section * * *." (Emphasis added.) This is clearly an enactment which is meant to have retroactive effect. Such an enactment is proscribed by Section 28, Article II of the Ohio Constitution.

If we sever this unconstitutional portion of Issue 5, what remains from Issue 5 are the provisions that no person can serve more than four consecutive two-year terms on council; that any person having served such a number of consecutive terms must sit out (not be eligible to run) for two consecutive two-year terms before again being eligible to seek office as a councilperson; and that these provisions be effective commencing December 1, 1993. This then permits us to harmonize Issue 5 with Issue 4 by holding that Issue 4's language, " * * * without restriction relating to the citizen's *prior* experience as a member of council * * * " (emphasis added), pertains only to that service occurring before December 1, 1993 and any service thereafter is governed by the remaining

provisions of Issue 5 with Issue 4 having no further effect after December 1, 1993. This construction follows the law by severing the unconstitutional portion of Issue 5, and harmonizing Issue 5 with Issue 4 and giving effect to both.

While Mirlisena sets forth other reasons to reach this result, for the purpose of deciding the question before us, it is not necessary to discuss them.

Accordingly, we strike the unconstitutional provision of Issue 5. We retain and preserve Issue 4 and the rest of Issue 5, *including the term limitation provision,* with Issue 4 having no further effect after December 1, 1993. Having done so, upon review of the law and the facts of this matter, we grant the requested writ of mandamus.

*Writ allowed.*

A.W. SWEENEY, DOUGLAS and RESNICK, JJ., concur.

PFEIFER, J., concurs in judgment only.

MOYER, C.J., WRIGHT and F.E. SWEENEY, JJ., dissent.

ALICE ROBIE RESNICK, J., concurring. I concur in the *per curiam* opinion, but write separately to address this court's October 7, 1993 decision to grant relator's motion for rehearing. Specifically, I address why relator's rehearing motion was timely filed.

On September 14, 1993, this court announced a decision on relator Mirlisena's complaint for a writ of mandamus, ordering that the writ "is hereby, denied, consistent with the opinion to follow." *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 445, 619 N.E.2d 1013. No opinion of the court was released at that time.

It has been our practice, from time to time, to release decisions on various matters in this way, "consistent with the opinion to follow." See, *e.g., State ex rel. Ruehlmann v. Luken* (1992), 64 Ohio St.3d 1435, 595 N.E.2d 944, opinion to follow announced at 65 Ohio St.3d 1, 598 N.E.2d 1149; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 64 Ohio St.3d 1451, 597 N.E.2d 1108, opinion to follow announced at 65 Ohio St.3d 5, 598 N.E.2d 1152; *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 1426, 600 N.E.2d 244, reasons of the court announced at 65 Ohio St.3d 167, 602 N.E.2d 615; *State ex rel. Walsh v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 1426, 600 N.E.2d 244, opinion to follow announced at 65 Ohio St.3d 197, 602 N.E.2d 638; *State ex rel. Barth v. Hamilton Cty. Bd. of Elections* (1992), 65 Ohio St.3d 1414, 598 N.E.2d 1166, opinion to follow announced at 65 Ohio St.3d 219, 602 N.E.2d 1130. The apparent reason for following this practice in election matters is to carry out the purpose of S.Ct.Prac.R. VIII(11). That purpose is "the necessity of a prompt disposition of an original action relating to a pending

election * * *." However, while the rules specifically address expediting the briefing schedule in an election matter, nowhere do the rules address expediting the release of our vote, or our practice of announcing a decision "with the opinion to follow." The importance of resolving election matters promptly is obvious. Nevertheless, when an extraordinary action (such as the early release of an election vote without an opinion of the court attached) is taken which is neither authorized nor forbidden by our rules, the other rules of court should be interpreted with some flexibility so that we do not reach a result that defies common sense.

S.Ct.Prac.R. IX(1) provides that a rehearing motion "shall be filed within ten days after the *announcement* of the decision." (Emphasis added.) Relator in this case did not file a motion for rehearing within ten days of September 14, 1993, the date this court's initial vote was announced. However, S.Ct.Prac.R. IX(1) goes on to provide that "[s]uch motion must be confined strictly to the grounds urged for rehearing * * *." The concern is, if no opinion of the court is released when a merit case is "announced," how is it possible to set forth grounds for rehearing? If the court has never released an opinion, it is impossible to know what grounds should be stated in the motion for rehearing.

The case before us is a perfect example of the problems which arise when this court releases a vote without an opinion. When Mirlisena received the decision in his case on September 14, 1993, he had no basis on which to file a motion for rehearing. It was not until the decision was announced in *State ex rel. Sterne v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 1463, 619 N.E.2d 697 (a case arising out of the same circumstances and involving issues similar to his but decided differently by a unanimous court) that Mirlisena would have had a reason to believe that a motion for rehearing was appropriate. The decision in the *Sterne* case was announced on September 29, 1993[1] and Mirlisena filed a motion for rehearing on October 1, 1993 setting forth the grounds for rehearing as he perceived them to be at that time. Strict interpretation of the ten-day rehearing motion requirement in this instance would be blatantly unjust. S.Ct.Prac.R. IX(1) presumes that an opinion will be released in a merit case at the same time the decision is "announced." In a situation such as this, the rule must be read to allow one to file a motion for rehearing within ten days after the announcement

---

1. No opinion in *Sterne* was released at that time, as this court granted the writ in that case "consistent with the opinion to follow." Hence, although relator had no way of knowing precisely why the court resolved *Sterne* as it did, relator became aware of the possibility that the *Sterne* result may have been inconsistent with the result in his case. Relator, in the motion for rehearing, raised his general concerns about possible inconsistent treatment, although he was unable to specifically address why the court was wrong in its apparent lack of consistency in the treatment of the two cases. Relator's principal point was that "cases involving the same facts ought to be decided in the same way."

and release of the *opinion* (or, possibly as in this case after the party learns of a basis for rehearing), rather than blindly following the literal requirements of a rule which obviously is not designed for the situation before us.

Perhaps this court should reexamine its unorthodox practice of releasing a vote in an election matter when no opinion is ready to be released. It may be prudent for us to adopt a rule specifically addressing this situation. Until that time, we should be flexible in interpreting our procedural rules so that absurd results are not reached. No opinion setting forth the reasons the court initially voted to deny relator's complaint for mandamus was ever released in this case. Therefore, the ten-day limitation of S.Ct.Prac.R. IX(1) never commenced to run. Relator's motion for rehearing was timely under the very unusual circumstances of this case, and was properly considered by this court.

A.W. SWEENEY and DOUGLAS, JJ., concur in the foregoing concurring opinion.

PFEIFER, J., concurring in judgment only. My reasons for allowing relator's writ were stated in my opinion in *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 445, 448, 619 N.E.2d 1013, 1015. Issue 4 and Issue 5, both passed by the voters of Cincinnati, are in direct conflict on the issue of term limits. Absent any guidance from the city charter or the Ohio Constitution on how to resolve such a conflict, both charter amendments should be held void at the present time. Since the charter would thus lack any effective term limit provision, relator could properly have his name included on the ballot.

In my view, Issue 5 is not unconstitutionally retroactive. It does not impair vested rights and does not attach a new disability to transactions or considerations already past. *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 807. Issue 5 does not interrupt a council term that has already begun. It simply says that a four-consecutive-term member of council may not seek reelection at the end of his fourth term without sitting out two elections.

Therefore, since Issue 5 is not unconstitutional, the people of Cincinnati may decide the issue of term limits by putting Issue 4 on the ballot for repeal. If they vote to repeal Issue 4, term limits will take effect pursuant to Issue 5.

MOYER, C.J., dissenting. Because I believe this court should have abided by its own rule and refused to consider the motion for rehearing filed by relator Mirlisena, I dissent from the entry announced October 7, 1993, and the opinion that is issued today.

S.Ct.Prac.R. IX(1) sets forth the time within which a motion for rehearing must be filed in the Supreme Court:

"A motion for rehearing shall be filed within ten days after the announcement of the decision. Such motion must be confined strictly to the grounds urged for rehearing and must not constitute a reargument of the case. Notice of such

motion shall be served on opposing counsel, who shall have five days to file his memorandum contra."

The parties to a case before this court, and all others concerned with the matter, have a right to expect that the court will follow its own rules in disposing of the important issues before it. In the instant case, the board of elections, the candidates to the office of City Council of Cincinnati, their supporters, and the voters could be expected to rely on the entry of this court announced September 14, 1993 by which the court denied the writ of mandamus sought by Mirlisena. The effect of the order was to deny Mirlisena a place on the November ballot for City Council of Cincinnati. A motion for rehearing of that order was due to be filed under the Supreme Court rule no later than September 24. Mirlisena filed a motion for rehearing on October 1, seven days out of rule.

One of the concurrences argues that the court should consider Mirlisena's untimely motion for rehearing because we did not issue an opinion on the day the entry was announced, and that when the entry in *State ex rel. Sterne v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 1463, 619 N.E.2d 697, was announced on September 29, relator Mirlisena then knew upon what basis we had decided his case. Since no opinion was issued with the entry in the *Sterne* case, it is difficult to know how an entry in that case assisted Mirlisena in arguing a motion for rehearing in his case. The fact that the results in the two cases were different certainly does not mean that the legal analysis was the same.

The board of elections relied upon our decision in its preparations for the election to be held less than six weeks from the last day upon which a motion for rehearing could be filed pursuant to S.Ct.Prac.R. IX(1), the candidates relied upon our decision, and the voters relied upon our decision. Particularly in an election case, we should not change our own rules during the contest. To do so is to say that the very institution with the responsibility to interpret and consistently apply rules adopted by others need not adhere to rules adopted by itself.

Mirlisena did not file a motion for rehearing within the time required by the rules of this court and I would therefore deny his motion for rehearing.

WRIGHT and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.