[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 201.]

THE STATE EX REL. PATTERSON, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Patterson v. Indus. Comm*., 1996-Ohio-263.]

*Workers' compensation—R.C. 4127.04 unjustifiably discriminates against dependents of work-relief employees by preventing such dependents from receiving the same benefits as dependents of other employees whose death is caused by a work-related injury or disease—R.C. 4127.04 violates the Equal Protection Clauses of the Ohio and United States Constitutions.*

R.C. 4127.04 unjustifiably discriminates against dependents of work-relief employees by preventing such dependents from receiving the same benefits as dependents of other employees whose death is caused by a work-related injury or disease. Therefore, R.C. 4127.04 violates the Equal Protection Clauses of the Ohio and United States Constitutions.

(No. 94-1776—Submitted May 21, 1996—Decided December 24, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD03-318.

———————

{¶ 1} In 1984, Frank H. Patterson was exposed to pigeon droppings while in the course of his employment as a work-relief employee for appellee Guernsey County Welfare Department, and, as a result, he contracted histoplasmosis. Patterson filed a workers' compensation claim, and he was awarded temporary total disability compensation. Patterson died in 1985 as a result of the disease.[1] Thereafter, Patterson's widow, appellant Viola Patterson, filed an application for

———————

1. At the time of Patterson's death, he also had a claim for benefits for permanent total disability pending before the Industrial Commission. In a document prepared by an attorney for the commission, it was recommended that his application be granted. However, the claim was ultimately abated by the commission as a result of Patterson's death.

death benefits. A district hearing officer for appellee Industrial Commission granted the claim, and appellant was awarded a weekly death benefit of $33.11, the same rate at which Patterson had received temporary total disability compensation prior to his death.

{¶ 2} Appellant appealed the amount of the award to the regional board of review. The board affirmed the hearing officer's order. Appellant further contested the amount of the award, but it was ultimately administratively affirmed.

{¶ 3} On March 9, 1993, appellant filed a complaint in mandamus in the court of appeals, claiming that the commission abused its discretion in awarding her death benefits below the minimum set forth in R.C. 4123.59(B). Appellant further alleged that she was denied equal protection under the law because she was granted a lesser award than she would have received as a dependent of a non-work-relief employee.

{¶ 4} The matter was initially heard by a referee, who recommended that the court of appeals deny the writ. The referee concluded that R.C. 4123.59(B) was not applicable in this case, that appellant's claim was governed by R.C. Chapter 4127, and that the commission properly awarded appellant weekly benefits of $33.11 pursuant to R.C. 4127.04. The referee also rejected appellant's equal protection argument, concluding that the General Assembly was justified in differentiating between awards to dependents of deceased employees who received public assistance and dependents of deceased employees who received other employer-paid wages. The court of appeals adopted the referee's report and denied the writ.

{¶ 5} The cause is now before this court upon an appeal as of right. Neither the commission nor the welfare department has responded to appellant's appeal.

———————————

*Daniel D. Connor Co.*, *L.P.A.*, and *Daniel D. Connor*, for appellant.

———————————

**DOUGLAS, J.**

{¶ **6**} Appellant's weekly award of $33.11 was based upon R.C. 4127.04, which provides:

"The basis upon which compensation or benefits shall be computed, is the amount of work-relief which would have been afforded to the injured person for the calendar week in which the injury or death occurred. In no event shall such compensation exceed the maximum reimbursement relief award established by the state which the claimant would have been entitled to had he not been injured."

{¶ **7**} Appellant claims that her award should not have been based upon R.C. 4127.04, but, rather, former R.C. 4123.59(B), which provided:

"In case an injury to or an occupational disease contracted by an employee causes his death, benefits shall be in the amount and to the persons following:

"* * *

"(B) If there are wholly dependent persons at the time of the death, the weekly payment shall be sixty-six and two-thirds per cent of the average weekly wage, but not to exceed a maximum aggregate amount of weekly compensation which is equal to sixty-six and two-thirds per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, *and not in any event less than a minimum amount of weekly compensation which is equal to fifty per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, regardless of the average weekly wage * * **."[2] (Emphasis added.) 136 Ohio Laws, Part I, 1167.

{¶ **8**} In support of her position that her weekly death benefit award should have been based upon R.C. 4123.59(B), appellant relies, *inter alia*, on R.C. 4127.03 and 4127.13. Former R.C. 4127.03, 1953 H.B. No. 1, provided, in part, that

---

2. There has been no substantive change to the quoted portion of this version of the statute, or to the portions of former versions of other statutes quoted in this opinion.

"[e]very work-relief employee who sustains an injury and the dependents of such as are killed, in the course of and arising out of employment, * * * shall be entitled to receive out of the public work-relief employees' compensation fund, compensation [and] death benefits * * * for loss sustained on account of such injury or death, *as is provided for by sections 4123.01 to 4123.94, inclusive, of the Revised Code*." (Emphasis added.) Relying on this italicized language, appellant points out that R.C. 4123.59(B) falls within R.C. Chapter 4123 and, therefore, she is entitled to at least fifty percent of the statewide average weekly wage.

{¶ 9} Further, former R.C. 4127.13, 137 Ohio Laws, Part II, 3964, provided that "[s]ections 4123.01 to 4123.94, except sections 4123.519, 4123.62, and 4123.64, apply to sections 4127.01 to 4127.14, of the Revised Code." Appellant contends that because R.C. 4127.13 does not specifically exclude R.C. 4123.59 from applying to R.C. Chapter 4127, the General Assembly intended that R.C. 4123.59(B) govern the amount of benefits available to dependent persons of work-relief employees.

{¶ 10} At first glance, appellant's statutory arguments regarding R.C. 4127.03 and 4127.13 appear to have some merit. Appellant's position is arguable given the general policy of workers' compensation legislation, which requires a liberal construction of such laws. See R.C. 4123.95.[3] However, it is apparent that the General Assembly, in enacting R.C. Chapter 4127 and, particularly, R.C. 4127.04, intended to establish a separate method for determining benefits for work-relief employees and their dependents. The last paragraph of R.C. 4127.03 provided that "[a]ll compensation payable under sections 4127.01 to 4127.14, inclusive, of the Revised Code, shall be paid on the basis of computation provided for in such sections." Further, R.C. 4127.13 specifically excludes from application

---

3. R.C. 4123.95 provides that "[s]ections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

to work-relief claims the foundational statute (R.C. 4123.62[C]) for calculating benefits under R.C. 4123.59(B). Hence, it is evident that the General Assembly intended that R.C. 4127.04 be the applicable statute when determining awards to work-relief employees and their dependents.

{¶ 11} Appellant also contends that even if we conclude that the commission's interpretation of R.C. 4127.04 was proper, its classification scheme, which treats dependents of work-relief employees differently from dependents of non-work-relief employees, violates the Equal Protection Clauses of both the Ohio and United States Constitutions. We agree. R.C. 4127.04 clearly violates appellant's right to equal protection of the laws. R.C. 4127.04 also contravenes the public policy which prompted Ohio's system of workers' compensation legislation and defeats the purpose of Section 35, Article II of the Ohio Constitution.

{¶ 12} In considering appellant's constitutional claim, we are mindful of the fundamental principle that legislative enactments are presumed constitutional. *Adamsky v. Buckeye Local School Dist*. (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212, 214; *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, 1201; and *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38, 616 N.E.2d 163, 166. We are also aware that "discrimination against individuals or groups is sometimes an inevitable result of the operation of a statute. The mere fact that a statute discriminates does not mean that the statute must be unconstitutional." *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 446-447, 613 N.E.2d 574, 577. See, also, *Adamsky*, *supra*, 73 Ohio St.3d at 362, 653 N.E.2d at 214. However, all laws, including legislation involving workers' compensation, are subject to the limitations imposed by the Equal Protection Clauses of the United States and Ohio Constitutions. See *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 122, 70 O.O.2d 206, 207-208, 322 N.E.2d 880, 882, fn. 2.

{¶ 13} The Fourteenth Amendment to the United States Constitution provides, in part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor deny to any person within its jurisdiction the equal protection of the laws." Similarly, Section 2, Article I of the Ohio Constitution states that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have a right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

{¶ 14} These constitutional guarantees require that all similarly situated individuals be treated in a similar manner. *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 119, 543 N.E.2d 1169, 1173. In other words, laws are to operate equally upon persons who are identified in the same class.

{¶ 15} Ohio's system of compensating employees and their dependents is predicated upon Section 35, Article II of the Ohio Constitution. This provision establishes that one objective of such a system is to compensate "*workmen and their dependents*, for death, injuries or occupational disease, occasioned in the course of such workmen's *employment*." (Emphasis added.) Clearly, R.C. 4127.04 and 4123.59 were enacted to fulfill this objective of compensating employees and their dependents.

{¶ 16} Appellant's decedent was a "work-relief employee" as defined in R.C. 4127.01(A), and his death occurred as a result of a disease contracted in the course of his employment. Further, R.C. 4123.01(A)(1)(a) defines "employee" to include "[e]very person in the service of the state, or of any county, municipal corporation, township, or school district therein." Appellant's decedent was thus an "employee" for purposes of receiving compensation due. See *Indus. Comm. v.*

*McWhorter* (1934), 129 Ohio St. 40, 1 O.O. 353, 193 N.E. 620, syllabus.[4] Notwithstanding, appellant was awarded a weekly benefit of $33.11, as a dependent of a work-relief employee, which was far below the minimum benefit available to dependents of non-work-relief employees set forth in R.C. 4123.59(B).

{¶ 17} In *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 176, 2 OBR 715, 717, 443 N.E.2d 962, 965, relying on *Kinney*, *supra*, we noted that legislation could survive constitutional scrutiny if the statute at issue were "rationally related to the accomplishment of some state objective at least as important as the purpose contained in the Constitution [Section 35, Article II] and reflected in the statute." In *Doersam*, 45 Ohio St.3d at 120, 543 N.E.2d at 1174, we stated that "a classification of persons will not be suspect when the law establishing the classification relates to a legitimate governmental purpose. If the means employed by the law to achieve its ends is the classification of persons who are accorded differing benefits or assessed differing burdens, the law will be tested under the equal protection guarantee. If the classification does not meet or does not have a sufficient relationship to a required governmental purpose, then the law cannot withstand scrutiny under the Equal Protection Clause." We noted further that "'[e]qual protection of the laws requires the existence of reasonable grounds for making a distinction between those within and those outside a designated class.'" *Id.*, quoting *Nyitray*, 2 Ohio St.3d at 175, 2 OBR at 717, 443 N.E.2d at 964.

---

4. In *Indus. Comm. v. McWhorter* (1934), 129 Ohio St. 40, 1 O.O. 353, 193 N.E. 620, syllabus, this court held:

"One who applies to a municipality for relief and is given the opportunity, and required, to work for the support which he is to receive, and who, in response to such opportunity and requirement, works in one of the municipal departments which employs labor, under the direction of a municipal foreman, at a regular daily wage, payable alternately in groceries and in cash, is in the service and is an employee of the municipality within the meaning of Section 1465-61 of the General Code; and if he sustains an injury while engaged in such work, is entitled to the benefits of Workmen's Compensation Law."

{¶ 18} R.C. 4127.04 creates a separate classification of dependent persons based only on the status of the employee. The statute does not treat similarly situated persons—all employees and their dependents—in a similar manner. Thus, we must determine whether this disparate treatment is based upon "any legitimate governmental purpose. If it was, then the legislation meets constitutional muster. If not, then a violation of equal protection must be found." *Doersam*, 45 Ohio St.3d at 120, 543 N.E.2d at 1174.

{¶ 19} The Public Works Relief Compensation Act (R.C. Chapter 4127) was originally enacted as emergency legislation "necessary for the immediate preservation of the public peace, health and safety." Section 17, Am.Sub.H.B. No. 495, 116 Ohio Laws, Parts I, 212, 217. Section 17 also provided that "[t]he reason for such necessity lies in the fact that it has become immediately necessary to provide a separate system of compensation for public work-relief employes and their dependents, due to the fact that considerations arise with respect to the hazards of employment and injuries of such employes which do not apply to the other employes mentioned in the workmen's compensation law of Ohio, and also because of the fact that this class of employment was neither foreseen nor contemplated by the legislature in originally framing the workmen's compensation law of Ohio, and there has been accordingly an unexpected increased burden placed upon the state insurance fund in compensating such employes out of that fund." 116 Ohio Laws at 217-218.

{¶ 20} However, this court has previously rejected classifications in legislation to ensure the financial security of the workers' compensation insurance fund. See *Doersam*, 45 Ohio St.3d at 120, 543 N.E.2d at 1174. In fact, we have specifically held that "'conserving funds is not a viable basis for denying compensation to those entitled to it.'" *Id*. at 121, 543 N.E.2d at 1174, quoting *Nyitray*, *supra*, 2 Ohio St.3d at 177, 2 OBR at 719, 443 N.E.2d at 966. Moreover, it escapes us how the classifications created by R.C. 4127.04 tend to further the

"health, peace, morals, education or the good order of the people. Nor do the classifications increase the industry of the state, develop our resources, or add to the state's wealth or prosperity." *Doersam*, 45 Ohio St.3d at 121, 543 N.E.2d at 1174.

{¶ 21} The court of appeals held that R.C. 4127.04 is rationally related to a legitimate government objective. Specifically, the court of appeals adopted the referee's finding that "different social and economic goals" justified the disparate treatment afforded employees and their dependents under R.C. 4127.04. While the court of appeals did not expand on this statement, we take it to mean that providing lesser benefits to dependents of a deceased employee who engaged in work relief would somehow discourage reliance on public assistance. We cannot accept this argument as being a rational basis for such blatant disparate treatment.

{¶ 22} R.C. 4127.04 treats those who are less fortunate, simply because they are less fortunate, differently from others similarly situated. Appellant's decedent was an employee. He was working in accordance with the requirements to receive public assistance. He contracted a disease as part of that employment, and died as a result of the disease. Appellant's widow should be afforded the protection that other widows of other deceased injured employees receive. In this regard, we view R.C. 4127.04 as inherently unfair and contrary to the purpose of compensating employees and dependents stated in Section 35, Article II of the Ohio Constitution. See, *e.g.*, *Nyitray*, 2 Ohio St.3d at 175-176, 2 OBR at 717, 443 N.E.2d at 964-965.

{¶ 23} The arbitrary nature of R.C. 4127.04 can best be illustrated by an example which considers the minimum award available to non-work-relief dependents, *regardless of the employee's weekly wage.* For instance, if appellant's decedent had been engaged the week preceding his death in non-work-relief employment paying a weekly wage of $33.11, appellant would not have been limited to a weekly death benefit of $33.11. Rather, appellant would have been

entitled to a benefit equal to fifty percent of the statewide average weekly wage, according to R.C. 4123.59(B), which is considerably greater than $33.11. See R.C. 4123.62(C). We can conceive of no reasonable justification for such disparate treatment between work-relief employees and non-work-relief employees.

{¶ 24} The classification created by R.C. 4127.04 is not rationally related to a legitimate government objective. "Clearly, the workers' compensation system is designed to aid workers and their dependents and not intended to penalize victims by denying compensation where due." *Nyitray*, 2 Ohio St.3d at 178, 2 OBR at 719, 443 N.E.2d at 966. As was eloquently stated by Judge Wilkin in *McWhorter*, *supra*, 129 Ohio St. at 46, 1 O.O. at 355-356, 193 N.E. at 622:

"It seems to this court more in harmony with the spirit of work-relief legislation to hold the claimant to be an employee than to hold him to be a pauper or ward. A sound public policy prompts the efforts of the state to preserve the self-reliance of its citizens, even if at extra expense. It is as important to preserve the character as to preserve the lives of its citizens. 'Ill fares the land * * * where wealth accumulates and men decay.'"

{¶ 25} Accordingly, we hold that R.C. 4127.04 unjustifiably discriminates against dependents of work-relief employees by preventing such dependents from receiving the same benefits as dependents of other employees whose death is caused by a work-related injury or disease. Therefore, R.C. 4127.04 violates the Equal Protection Clauses of the Ohio and United States Constitutions.

{¶ 26} For the foregoing reasons, the judgment of the court of appeals denying appellant's writ of mandamus is reversed, and the commission is ordered to determine appellant's benefits in accordance with this decision. Appellant is a dependent person of a decedent whose injury and subsequent death was caused by a work-related disease, and, therefore, she is entitled to the minimum benefit set forth in R.C. 4123.59(B).

*Judgment reversed*

*and writ granted.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

PFEIFER, J., concurs separately.

MOYER, C.J., COOK and STRATTON, JJ., dissent.

———————————

**PFEIFER, J., concurring.**

{¶ 27} I write only to express my incredulity that this matter has reached this court. Ohio's welfare and workers' compensation systems heartlessly memorialized the difficult life of Frank Patterson with a cruel epitaph: "He Shouldn't Have Tried." Patterson attempted to live his life with some dignity. He did not take a handout—he was willing to work in order to receive public assistance. God knows it was not pleasant work—his on-the-job exposure to pigeon droppings caused his mortal illness. But "workfare" and its promise of improved self-esteem and self-reliance left Patterson dead and his widow with an insulting $33.11 per week. How poor off are we that this state cannot offer the families of work-relief employees killed on the job the same treatment as other workers killed on the job? Is death on work relief jobs so prevalent that the Department of Human Services cannot afford to reimburse the workers' compensation fund for the cost of the benefits? Did the General Assembly really intend that the widow Patterson should survive on $1,721.72 per year? Would the extra seven thousand dollars a year Mrs. Patterson requests bust Ohio's $16 billion budget? Or is our deficit not monetary but rather a shortfall in compassion and humanity?

———————————

**Cook, J., dissenting.**

{¶ 28} I respectfully dissent on the basis that the appellant has not shown an equal protection violation.

{¶ 29} In order for this court to strike down a democratically produced statute based on equal protection, we must follow a legitimate process independent

of our social or moral preferences. We start with the presumption of constitutionality and must uphold the statute unless its unconstitutionality is shown beyond a reasonable doubt. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926, 928. In this case, the challengers must show that the classification is wholly irrelevant to any state purpose. *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447, 613 N.E.2d 574, 577.

{¶ 30} The majority finds appellant has met the burden of demonstrating the unconstitutionality of the separate compensation system for work-relief employees with broad conclusions sounding in the realm of social "rightness," such as "inherently unfair," "blatant disparate treatment," "those who are less fortunate," and this "widow should be afforded the protection that other widows * * * receive."

{¶ 31} My personal preference about the treatment of widows falls right in line with the majority's. Such personal preferences necessarily aside, however, I believe the appellant has failed to demonstrate that the legislative decision to set up different systems for compensating relief-workers and wage-earning workers upon death or injury is wholly irrelevant to any state purpose. The majority outlines the origins of this separate system for relief workers and the case to which the legislature was responding. Classifying such workers differently need only bear some rational relationship to a legitimate governmental objective. *Id.* The legitimacy of the objective is judged by relevance to a state purpose — not by whether we judges personally can abide such objective.

{¶ 32} I agree with the court of appeals that the challenged statute does not offend equal protection principles. I would, therefore, affirm the judgment and deny the writ.

MOYER, C.J., concurs in the foregoing dissenting opinion.

———————————

**STRATTON, J., dissenting.**

**{¶ 33}** I respectfully dissent and join Justice Cook's dissent. This was a tragic death and my sympathies are the same as those of the majority of this court. There is great temptation to award Patterson's widow a sum greater than $33.11 per week. It is easy to do with the stroke of a pen. But to do so requires that we invalidate an entire statutory system based solely on the definition of "employee," without taking into account all of the other circumstances that legitimately surround that single word.

**{¶ 34}** Ohio's workers' compensation system is designed to provide protection to the employee for work-related injuries without relation to fault. In return, the employer is protected from suits, but funds the system. Thousands of Ohio companies, large and small, contribute to provide the financial basis of workers' compensation. The cost and risks are spread broadly throughout the system, but those who benefit from the employee's work shoulder the burden of its costs.

**{¶ 35}** The work-relief system is wholly different in character and purpose. It is a system of public works designed to supplement welfare. It is not funded by employers who benefit from such work. Instead, it is funded by the taxpayer, as is the rest of the welfare system. Although the legislature added a workfare-related compensation plan, the plan specifically related to the workfare and was an extension of welfare protection. It is distinguished by statute from the employer-funded workers' compensation system.

**{¶ 36}** The majority would now discard the entire system under an equal protection argument because appellant's decedent was an "employee" and because cost should be no deterrent. But as Justice Cook pointed out, the equal protection argument fails because the two systems are wholly unequal in purpose, character, and basis. The beneficiary of a workfare employee who dies as a result of a work-related injury will now receive far greater benefits than the workfare employee

received when alive from a system funded by the taxpayer—an extended, increased welfare benefit.

**{¶ 37}** This is a decision that should not be made by the courts under the guise of "equal protection." There are enormous costs associated with this decision. How will these new expenses be funded? These are issues that require debate, testimony, studies, compromise—all part of the legislative process. We as a court are not equipped to play that role, as tempting and sympathetic as the facts in this case are.

**{¶ 38}** The reality is that a workfare recipient is a welfare recipient whereas a wage-earner is supported by the Ohio employers who fund the workers' compensation system. These employees are *not* similarly situated. Equal protection does not apply. Any such massive changes in the compensation system are best left to the legislature.

MOYER, C.J., concurs in the foregoing dissenting opinion.

————————————