DECISION
{¶ 1} Relators, William Beck and Bruce Smith, have filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders on the basis that the commission failed to apply to their cases the Ohio Supreme Court's holding in State ex rel. Patterson v. Indus.Comm. (1996), 77 Ohio St.3d 201, thereby failing to properly calculate relators' average weekly wage ("AWW") and entitlement to temporary total disability ("TTD") compensation. In addition to requesting a writ of mandamus ordering the commission to apply Patterson to the facts of their case, relators further request that this court certify the matter as a class action.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant relators' request for a writ of mandamus, and further recommending that the matter be certified as a class action. (Attached as Appendix A.)
 {¶ 3} The commission has filed objections to the magistrate's decision, and respondent Mahoning County has joined in those objections. The primary issue raised by the commission is whether the magistrate erred in applying the rationale in Patterson, supra, to the facts of the instant case. The commission maintains that the holding inPatterson is limited to dependents of work-relief employees, and that it does not extend to work-relief employees themselves. The commission further contends that, even assuming Patterson to be applicable, the magistrate erred in recommending class certification.
 {¶ 4} In Patterson, supra, the Ohio Supreme Court held that R.C. 4127.04 violates the Equal Protection Causes of the Ohio and United States Constitutions, as the statute "unjustifiably discriminates against dependents of work-relief employees by preventing such dependents from receiving the same benefits as dependents of other employees whose death is caused by a work-related injury or disease." Id., at syllabus.
 {¶ 5} In Patterson, involving a death benefits claim by a widow of a work-relief employee, the court observed that the legislative intent of R.C. Chapter 4127 was to "establish a separate method for determining benefits for work-relief employees and their dependents." Id., at 203. The court noted, however, that Ohio's system of compensating employees and their dependents is predicated upon Section 35, Article II of the Ohio Constitution, and that "R.C. 4127.04 and 4123.59 were enacted to fulfill this objective of compensating employees and their dependents." Id., at 205.
 {¶ 6} In considering whether Ohio's classification scheme was violative of equal protection, the court noted the fact that appellant's decedent was a "work-relief employee," as defined by R.C. 4127.01(A), and that R.C. 4123.01(A)(1)(a) "defines `employee' to include `[e]very person in the service of the state, or of any county, municipal corporation, township, or school district therein.' " Id. In construing those provisions, the court concluded that "[a]ppellant's decedent was * * * an `employee' for purposes of receiving compensation due." Id.
 {¶ 7} As a dependent of a work-relief employee, the decedent's widow in Patterson was awarded a weekly benefit, which the court observed was "far below the minimum benefit available to dependents of non-work-relief employees set forth in R.C. 4123.59(B)." Id. The court held that R.C. 4127.04, in creating a separate classification for a dependent person based only upon the status of the employee, "does not treat similarly situated persons — all employees and their dependents — in a similar manner." Id., at 206. In finding R.C. 4127.04 to be unconstitutional, the court concluded that there was "no reasonable justification for such disparate treatment between work-relief employees and non-work-relief employees." Id., at 207.
 {¶ 8} In the instant action, the magistrate, in considering the language of Patterson, including the Ohio Supreme Court's determination that Patterson (the appellant's decedent) himself was an "employee" for purposes of receiving compensation due, concluded that the Ohio Supreme Court did not limit its analysis to dependents of work-relief employees, but included "employees" themselves. The magistrate therefore found thatPatterson was applicable to relators herein.
 {¶ 9} Based upon this court's review of Patterson, we find the magistrate's interpretation to be reasonable. Although the particular facts of Patterson presented a dependent of a work-relief employee seeking death benefits, the court's analysis focused upon whether work-relief employees and non-work-relief employees were similarly situated. Further, the language employed by the Ohio Supreme Court, finding: (1) that R.C. 4127.04 "does not treat similarly situated persons — all employees and their dependents — in a similar manner"; (2) that there exists no justification for disparate treatment between "work relief employees and non-work relief employees"; and (3) that R.C. 4127.04 is "inherently unfair and contrary to the purpose of compensating employees and dependents," does not suggest a distinction, for purposes of the court's constitutional analysis, between work-relief employees and their dependents. Thus, we agree with the magistrate's conclusion that the holding in Patterson, finding R.C. 4127.04 to be violative of equal protection, is not limited solely to dependents of work-relief employees, but also includes work-relief employees themselves.
 {¶ 10} The commission argues that the magistrate failed to address relators' allegations that their right to equal protection was violated. We disagree. Relators' position before the magistrate was not that this court should determine whether R.C. 4127.04 was violative of equal protection concerns; rather, relators argued that Patterson had already decided the issue, but that the commission had continued to unlawfully apply that statute to work-relief compensation cases.
 {¶ 11} The commission further contends that the majority inPatterson failed to express an appreciation of the inequalities built into both the workers' compensation laws and the welfare system. However, to the extent the commission challenges the wisdom of thePatterson majority's holding that there is no justification for disparate treatment between work-relief employees and non-work-relief employees, this court is bound to apply the majority opinion unless and until that court rules otherwise.
 {¶ 12} Accordingly, respondents' objections regarding the magistrate's interpretation and application of Patterson are not well-taken and are overruled.
 {¶ 13} As previously noted, the commission also challenges the magistrate's recommendation that this matter be certified as a class action. This court independently reviews a magistrate's decision, and we are "free to `adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter.' " State ex rel. Davis v. PublicEmployees Retirement Bd., Franklin App. No. 04AP-1293, 2005-Ohio-6612, at ¶ 13 ("Davis I"), affirmed, State ex rel. Davis v. Public EmployeesRetirement Bd., 111 Ohio St.3d 118, 2006-Ohio-5339 ("Davis II").
 {¶ 14} In Hamilton v. Ohio Savings Bank (1998), 82 Ohio St.3d 67, 71, the Ohio Supreme Court held that the following seven requirements must be satisfied in order to maintain a class action under Civ. R. 23:
 * * * (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ. R. 23(B) requirements must be met. Civ. R. 23(A) and (B); Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091.
 {¶ 15} Civ. R. 23(B) states as follows:
 An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
 {¶ 16} This court has previously found class certification to be unnecessary, pursuant to Civ. R. 23(B), under circumstances in which a litigant, while not challenging the constitutionality of a statute itself, sought to challenge the "constitutionality of its implementation." Frisch's Restaurant, Inc. v. Conrad, Franklin App. No. 05AP-412, 2005-Ohio-5426, at ¶ 25. Under the facts of Frisch's, appellants sought class certification to challenge the manner in which the administrator of the Bureau of Workers' Compensation handled dividend credits on retrospectively rated state fund premiums. The trial court denied class certification, finding that class certification was not the superior method with which to determine appellants' claims.
 {¶ 17} On appeal, this court noted that the issue was "not whether a proposed class's challenge is constitutional in nature; it is whether the requested relief would automatically accrue to the benefit of those in the proposed class without resort to class litigation." Id., at ¶ 26. On this point, we held that "a determination regarding the propriety of appellee's definition of a `subscriber' or policies granting dividend credits would automatically benefit any organization in the same position as appellants." Id. This court further noted that "the court's decision will necessarily result in the bureau applying the same definitions and standards to all of its participants," and that "[f]urther litigation would only be necessary if the bureau refused to comply with a lawful court order." Id., at ¶ 27.
 {¶ 18} This court has adopted this same principle in other cases. SeeDavis I, at ¶ 19 (class action certification denied to employees of county public defenders office challenging determination by state retirement board that they were not entitled to participate in state retirement system; "a determination in favor of relators would automatically accrue to the benefit of others similarly situated");Horvath v. State Teachers Retirement Bd. (Mar. 31, 1995), Franklin App. No. 94APE07-988 (no abuse of discretion by trial court in refusing to certify cause as a class action; regardless of outcome of constitutional issue, State Teachers Retirement Board "would be required, as it has in the past, to apply the decision consistently to all potential members of the class"); Smith v. State Teachers Retirement Bd. (Feb. 5, 1998), Franklin App. No. 97APE07-943 (denial of class action certification proper as a verdict in favor of appellants "would necessarily establish an identical legal framework applicable to all STRS members").
 {¶ 19} More recently, the Ohio Supreme Court recognized that "[t]he application of a need requirement," for purposes of determining whether to certify a class action, "advances the purpose of a class action, which is `to simplify the resolution of complex litigation, not complicate it.' (Emphasis sic.)" Davis II, at ¶ 42, quoting Warner v.Waste Mgmt., Inc. (1988), 36 Ohio St.3d 91, 97.
 {¶ 20} In the present case, we similarly find that a class action is not necessary, as a determination in favor of relators regarding the applicability of Patterson to work-relief employees "would automatically accrue to the benefit of those in the proposed class without resort to class litigation." Frisch's, supra, at ¶ 26. Accordingly, we reject the magistrate's recommendation that this matter be certified as a class action, and respondents' objections as to the issue of class certification are sustained.
 {¶ 21} Finally, relators have raised several "technical" objections to the magistrate's decision. More specifically, relators first take issue with the magistrate's statement that a writ of mandamus should issue ordering the commission "to pay relators TTD compensation at their full weekly wage." Relators argue, and the commission agrees, that the "full weekly wage" is used only to calculate the compensation for the first 12 weeks for which compensation is payable. See R.C. 4123.61. On this point, we find merit with relators' contention that the magistrate should have ordered the commission to perform the proper calculations of relators' AWW rather than full weekly wage.
 {¶ 22} Relators also contend that the magistrate "miscalculated" their AWW. We disagree. While the magistrate noted that relator Beck's weekly wage was $82.90, and Smith's weekly wage was $30.89, the magistrate made no calculation as to relators' average weekly wage. Further, in light of our determination that Patterson is applicable to the facts of this case, the commission, on remand, will be directed to perform the proper calculation of AWW in accordance with the evidence on file and application of the holding in Patterson.
 {¶ 23} Based upon the foregoing, this court adopts the magistrate's findings of fact and conclusions of law as to the magistrate's determination that the commission abused its discretion in failing to apply the Ohio Supreme Court's holding in Patterson However, we do not adopt the magistrate's recommendation that this matter be certified as a class action. Accordingly, respondents' objections are sustained in part and overruled in part, and relators' request for a writ of mandamus is granted ordering the commission to apply Patterson to the facts of their case, and to properly calculate relators' AWW. Relators' request that this court certify this matter as a class action is denied. Finally, relators' "technical" objections are sustained to the limited extent provided above, but are otherwise overruled.
Objections sustained in part and overruled in part; writ of mandamusgranted.
 McGRATH and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 24} Relators William Beck and Bruce Smith have filed this mandamus action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders which failed to apply the Supreme Court of Ohio's holding fromState ex rel. Patterson v. Indus. Comm. (1996), 77 Ohio St.3d 201, to their cases thereby failing to properly calculate their average weekly wage ("AWW") and entitlement to temporary total disability ("TTD") compensation. Relators request a writ of mandamus ordering the commission to apply Patterson to the facts of their case and further request in their complaint that this court certify this matter as a class action.
Findings of Fact:
 {¶ 25} 1. Both relators Beck and Smith were working as public work-relief employees at the time they sustained injuries. Beck was injured on June 26, 2002 while working as a laborer for Ashtabula County. Beck was attacked by bees, jumped off a truck, and broke his leg.
 {¶ 26} 2. Beck filed a claim for workers' compensation with the Ohio Bureau of Workers' Compensation ("BWC") and the matter was assigned claim number 02-384475. Beck's claim was allowed for: "fracture right tibia, leg."
 {¶ 27} 3. Beck filed a motion requesting that his AWW and full weekly wage ("FWW") be set at $248.37. The BWC referred the claim to the commission for further consideration of Beck's request and requested that Beck's motion be denied for the following reasons:
 The wages and compensation for PWRE claims are set and paid differently than other claims. The amount of work relief payments the injured worker would have been entitled to for the calendar week that the injury occurred, is the basis for computing compensations [sic] rates. Therefore BWC request denial to the injured workers methods of setting wages.
 {¶ 28} 4. On November 20, 2002, a hearing was held before a district hearing officer ("DHO") who ultimately issued a corrected order mailed November 29, 2002 setting Beck's AWW and FWW, and determining TTD compensation as follows:
 Pursuant to Ohio Revised Code 4127.04, the claimant's Average Weekly Wage and Full Weekly Wage are set at $82.90. This is based on the claimant's public assistance receipts of $393.00 monthly divided by 4.5.
 Temporary Total Compensation is ordered paid from 06/27/2002 through 10/01/2002. The claimant returned to work on or about 10/02/2002. This is based on the 07/15/2002 C-84 completed by Dr. Myers.
 Please pay temporary total compensation in accord with ORC 4127.03 which governs the payment of compensation in public works cases.
 {¶ 29} 5. Beck appealed from the DHO order and the matter was heard before a staff hearing officer ("SHO") on January 17, 2003. The SHO modified the prior DHO order keeping Beck's AWW and FWW at the same amount, and denying TTD compensation. The SHO order provides, in pertinent part, as follows:
 Pursuant to Ohio Revised Code Section 4127.04, the Staff Hearing Officer orders that Claimant's Full and Average Weekly Wages are set at $82.90. This figure is based on the Claimant's public assistance receipts of $393.00 monthly divided by 4.5 weeks.
 This decision is based on Claimant's 07/22/02 record from Ashtabula County Department of Job Family Services.
 The Staff Hearing Officer finds that the Claimant was temporarily and totally disabled from 06/27/02 through 10/01/02, inclusive. The Claimant returned to work on or about 10/02/02. This finding is based on Dr. Myers' 07/15/02 C-84 report. However, pursuant to Ohio Revised Code Section 4127.03 and 4127.06, the Claimant is not entitled to temporary total compensation because the Claimant was not temporarily and totally disabled for greater than six months.
 Thus, temporary total compensation is not payable from 06/27/02 through 10/01/02, inclusive.
 This order is being placed pursuant to Ohio Revised Code Section 4127.03 and 4127.06.
 {¶ 30} 6. Beck appealed and the commission, by order mailed February 12, 2003, refused Beck's appeal.
 {¶ 31} 7. On April 22, 2003, Smith sustained an industrial injury while employed by Mahoning County. Smith's claim was assigned claim number 03-821904, and was subsequently allowed for: "sprain right knee."
 {¶ 32} 8. Pursuant to BWC order mailed October 1, 2003, Smith's AWW and FWW were both set at $30.89. The BWC based its calculations as follows:
 The wages and compensation for PWRE claims are set and paid differently that [sic] other claims. The amount of work relief payments the injured worker would have been entitled to for the calendar week that the injury occurred, is basis for computing compensation rates.
 {¶ 33} 9. In October 2003, Smith filed a C-86 motion requesting that his AWW be set at $221.44.
 {¶ 34} 10. Smith's motion was heard before a DHO on December 22, 2003. Based upon the Patterson case, the DHO granted Smith's motion and set his AWW at the requested amount, $221.44.
 {¶ 35} 11. The BWC appealed and the matter was heard before an SHO on February 5, 2004. The SHO affirmed the prior DHO order in full based upon the Patterson case.
 {¶ 36} 12. The BWC and the employer, Mahoning County, filed appeals and the matter was set before the commission on April 27, 2004. The commission vacated the prior SHO order and determined that the BWC had correctly set Smith's AWW at $30.89. The commission stated, in pertinent part, as follows:
 The Industrial Commission denies the injured worker's request to set the average weekly wage at $221.44 and finds that the Bureau of Workers' Compensation correctly set the average weekly wage at $30.89 as indicated in its order dated 10/01/2003. The Industrial Commission bases this finding on R.C. 4127.04, which specifies the basis for the computation of compensation benefits for a "work-relief employee" such as the injured worker in this claim. That statutory section provides as follows:
 The basis upon which compensation or benefits shall be computed, is the amount of work-relief which would have been afforded to the injured person for the calendar week in which the injury or death occurred. In no event shall such compensation exceed the maximum reimbursement relief award established by the state which the claimant would have been entitled to had he not been injured.
 The Industrial Commission finds that the relief that the injured worker was receiving for his work activity amounted to $139.00 per month, or $30.89 for the week in which the 04/22/2003 injury occurred. This finding is based on the 08/05/2003 letter on file from Cathy Jones, the employer's Risk Manager, indicating that the injured worker's work activity qualified him for a $139.00 monthly debit card for food. In addition, the Commission relies on the calculation of the amount of weekly relief benefits set forth in the Bureau of Workers' Compensation Referral letter dated 10/27/2003. Accordingly, the Industrial Commission finds that the average weekly wage in this claim was properly set at $30.89.
 At hearing, the injured worker contended that the Ohio Supreme Court has struck down the benefit computation method set forth in R.C. 4127.04 as a violation of the Equal Protection Clauses of both the Ohio and United States Constitutions, citing State ex rel. Patterson v. Industrial Commission (1996), 77 Ohio St.3d 201. The Industrial Commission finds, however, that the facts in Patterson are distinguishable from those involved in this case. In Patterson, the issue concerned the application of R.C. 4127.04 in the context of a widow-claimant's request for death benefits; in this case, the issue is the method of computation of the rate for regular benefits for the injured worker himself. The Commission finds this distinction significant for the reason that the express wording of the court's syllabus in Patterson indicates that the decision in the case is limited to claims for benefits by the dependents of injured workers. As such, the Industrial Commission finds that the holding in Patterson is inapplicable to the facts of this claim and that the injured worker's average weekly wage was correctly set by the Bureau at $30.89.
 {¶ 37} 13. Thereafter, relators filed the instant mandamus action requesting that this court issue a writ of mandamus ordering the commission to vacate its orders and redetermine Beck and Smith's work-relief employee workers' compensation in conformity with the Supreme Court of Ohio's decision in Patterson.
Conclusions of Law:
 {¶ 38} In this mandamus action, this court is being asked to determine whether the Supreme Court of Ohio's holding from the Patterson case applies to the facts of this case and, if so, what the practical consequences are.
 {¶ 39} The Patterson case involved a man who contracted histoplasmosis while in the course of his employment as a work-relief employee for the Guernsey County Welfare Department. Mr. Patterson died in 1985 as a result of this disease. Patterson's widow filed an application for death benefits. The commission awarded her a weekly death benefit of $33.11, the same rate at which Mr. Patterson had received TTD compensation prior to his death. The widow filed a mandamus action in this case and this court concluded that R.C. 4123.59(B) was not applicable and that the claim was governed by R.C. Chapter 4127. As such, this court found that the commission properly awarded her weekly benefits in the amount of $33.11 pursuant to R.C. 4127.04. This court also rejected her equal protection argument, concluding that the General Assembly was justified in differentiating between awards to dependents of deceased employees who received public assistance and dependents of deceased employees who received other employer paid wages.
 {¶ 40} Ultimately, the matter was heard before the Supreme Court of Ohio and in a four to three decision, the Patterson court held as follows:
 R.C. 4127.04 unjustifiably discriminates against dependents of work-relief employees by preventing such dependents from receiving the same benefits as dependents of other employees whose death is caused by a work-related injury or disease. Therefore, R.C. 4127.04 violates the Equal Protection Clauses of the Ohio and United States Constitutions.
Id. at syllabus.
 {¶ 41} In reaching the above holding, the court noted:
 * * * [T]he General Assembly, in enacting R.C. Chapter 4127 and, particularly, R.C. 4127.04, intended to establish a separate method for determining benefits for work-relief employees and their dependents. * * * [I]t is evident that the General Assembly intended that R.C. 4127.04
be the applicable statute when determining awards to work-relief employees and their dependents.
Id. at 203-204.
 {¶ 42} Thereafter, the court went on to examine the constitutional claim and determined that the classification scheme of R.C. 4127.04, which treats dependents of work-relief employees differently from dependents of non-work-relief employees, violates the Equal Protection Clause of both the Ohio and United States Constitutions. In reaching this determination, the court specifically noted as follows:
 * * * [L]aws are to operate equally upon persons who are identified in the same class.
 Ohio's system of compensating employees and their dependents is predicated upon Section 35, Article II of the Ohio Constitution. This provision establishes that one objective of such a system is to compensate "workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment." (Emphasis added.) Clearly, R.C. 4127.04 and 4123.59 were enacted to fulfill this objective of compensating employees and their dependents.
Id. at 204-205.
Thereafter, the court made the following determination:
 Appellant's decedent was a "work-relief employee" as defined in R.C. 4127.01(A), and his death occurred as a result of a disease contracted in the course of his employment. Further, R.C. 4123.01(A)(1)(a) defines "employee" to include "[e]very person in the service of the state, or of any county, municipal corporation, township, or school district therein." Appellant's decedent was thus an "employee" for purposes of receiving compensation due. See Indus. Comm. v. McWhorter (1934), 129 Ohio St. 40 * * *, syllabus. Notwithstanding, appellant was awarded a weekly benefit of $33.11, as a dependent of a work-relief employee, which was far below the minimum benefit available to dependents of non-work-relief employees set forth in R.C. 4123.59(B).
Id. (Fn. omitted; emphasis added.)
 {¶ 43} After having determined that R.C. 4127.04 created a separate classification of dependent persons based solely on the status of the employee, the court went on to determine whether this disparate treatment was based upon any legitimate governmental purpose. The court looked at the history of the Public Works Relief Compensation Act and noted as follows:
 The Public Works Relief Compensation Act (R.C. Chapter 4127) was originally enacted as emergency legislation "necessary for the immediate preservation of the public peace, health and safety." Section 17, Am. Sub. H.B. No. 495, 116 Ohio Laws, Part I, 212, 217. Section 17 also provided that "[t]he reason for such necessity lies in the fact that it has become immediately necessary to provide a separate system of compensation for public work-relief employe[e]s and their dependents, due to the fact that considerations arise with respect to the hazards of employment and injures of such employe[e]s which do not apply to the other employ[e]s mentioned in the workmen's compensation law of Ohio, and also because of the fact that this class of employment was neither foreseen nor contemplated by the legislature in originally framing the workmen's compensation law of Ohio, and there has been accordingly an unexpected increased burden placed upon the state insurance fund in compensating such employe[e] out of that fund." 116 Ohio Laws at 217-218.
Id. at 206.
 {¶ 44} However, the court determined that conserving funds was not a viable basis for denying compensation to a person entitled to such and that "it escapes us how the classifications created by R.C. 4127.04 tend to further the `health, peace, morals, education or the good order of the people. Nor do the classifications increase the industry of the state, develop our resources, or add to the state's wealth or prosperity.' [State ex rel. Doersam v. Indus. Comm. (1989),45 Ohio St.3d 115], at 121."
 {¶ 45} In her dissent, Justice Stratton explained why she and Chief Justice Moyer determined that there was no equal protection violation as follows:
 Ohio's workers' compensation system is designed to provide protection to the employee for work-related injuries without relation to fault. In return, the employer is protected from suits, but funds the system. Thousands of Ohio companies, large and small, contribute to provide the financial basis of workers' compensation. The cost and risks are spread broadly throughout the system, but those who benefit from the employee's work shoulder the burden of its costs.
 The work-relief system is wholly different in character and purpose. It is a system of public works designed to supplement welfare. It is not funded by employers who benefit from such work. Instead, it is funded by the taxpayer, as is the rest of the welfare system. Although the legislature added a workfare-related compensation plan, the plan specifically related to the workfare and was an extension of welfare protection. It is distinguished by statute from the employer-funded workers' compensation system.
 The majority would not discard the entire system under an equal protection argument because appellant's decedent was an "employee" and because cost should be no deterrent. But as Justice Cook pointed out, the equal protection argument fails because the two systems are wholly unequal in purpose, character, and basis. The beneficiary of a workfare employee who dies as a result of a work-related injury will now receive far greater benefits than the workfare employee received when alive from a system funded by the taxpayer-an extended, increased welfare benefit.
 This is a decision that should not be made by the courts under the guise of "equal protection." There are enormous costs associated with this decision. How will these new expenses be funded? These are issues that require debate, testimony, studies, compromise-all part of the legislative process. We as a court are not equipped to play that role, as tempting and sympathetic as the facts in this case are.
 The reality is that a workfare recipient is a welfare recipient whereas a wage-earner is supported by the Ohio employers who fund the workers' compensation system. These employees are not similarly situated. Equal protection does not apply. Any such massive changes in the compensation system are best left to the legislature.
Id. at 209-210. (Emphasis sic.)
 {¶ 46} Relators assert that the Supreme Court of Ohio's holding inPatterson applies not only to dependents of work-relief employees, but to work-relief employees themselves as well. The commission would have us confine the Supreme Court's holding solely to "dependents" of work-relief employees and not to the work-relief employees themselves. However, because the Supreme Court concluded that Mr. Patterson himself was an "employee" for purposes of receiving compensation due, this magistrate concludes the Supreme Court did not limit its holding simply to "dependents" of workrelief employees but included those "employees" themselves. As such, in spite of the magistrate's reservations about the Supreme Court's holding in the Patterson case, this magistrate nevertheless concludes that the holding from Patterson applies here. As a result, it becomes necessary to determine the consequences of the holding from Patterson on the amount of TTD compensation payable to relators herein as well as payable to other work-relief employees.
 {¶ 47} The payment of TTD compensation is governed by R.C. 4123.56
which provides, in pertinent part, as follows:
 (A) Except as provided in division (D) of this section, in the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of the employee's average weekly wage so long as such disability is total, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, and not less than a minimum amount of compensation which is equal to thirty-three and one-third per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code unless the employee's wage is less than thirty-three and one-third per cent of the minimum statewide average weekly wage, in which event the employee shall receive compensation equal to the employee's full wages; provided that for the first twelve weeks of total disability the employee shall receive seventy-two per cent of the employee's full weekly wage, but not to exceed a maximum amount of weekly compensation which is equal to the lesser of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code or one hundred per cent of the employee's net take-home weekly wage. * * *
 {¶ 48} As above-stated, pursuant to R.C. 4123.56, a worker who is temporarily and totally disabled and whose earnings are less than one-third of the statewide minimum AWW receives their FWW at the time of their injury.
 {¶ 49} The record reveals that Beck's weekly wage was $82.90. The commission has submitted evidence that, in 2002, the year of Beck's injury, the statewide minimum AWW was $209.33. One-third of that amount would be $69.71. As such, Beck was making less than one-third of this amount. Smith's weekly wage was $30.89. The commission has submitted evidence that, in 2003, the year of Smith's injury, the statewide minimum AWW was $214.67. One-third of that amount is $71.55. Based upon the above-quoted portion of R.C. 4123.56(A), where an "employee's wage is less than thirty-three and one-third per cent of the minimum statewide average weekly wage, * * * the employee shall receive compensation equal to the employee's full wages." The magistrate also finds that this calculation would comport with R.C. 4127.06 which provides:
 During periods of temporary disability * * * an injured workrelief employee shall be paid directly out of the fund from which the employee was receiving relief, the amounts required to meet the budgetary needs of the employee and his dependents, and in the manner determined by the person or agency having control over or supervision of the fund.
 {¶ 50} Having found that the court's decision in Patterson would apply to the facts of this case because of the court's emphasis on the definition of "employee," the magistrate finds that relators have established that the commission abused its discretion and that relators should be paid TTD compensation in the amount of their full weekly wages for the time during their disability.
 {¶ 51} Relators have also asked that this court certify this matter as a class action. Relators describe the proposed class as follows:
 44. The class is defined as all injured work-relief employees with open and active cases who were or are eligible to receive temporary total disability benefits and other benefits through the Bureau of Workers' Compensation and who were awarded benefits, but not in the full amount due to them because they were calculated in accordance with R.C. § 4127.04, which is unconstitutional as determined by the Ohio Supreme Court in Patterson.
Complaint, at 8.
 {¶ 52} Civ. R. 23(A) states:
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 {¶ 53} Civ. R. 23(B) states:
 An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
 {¶ 54} A trial judge must make seven affirmative findings before a case may be certified as a class action. Two prerequisites are implicitly required by Civ. R. 23 while five others are specifically set forth therein. Warner v. Waste Management, Inc. (1988),36 Ohio St.3d 91, paragraph one of the syllabus.
 {¶ 55} The following seven requirements must be satisfied before an action may be maintained as a class action under Civ. R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ. R. 23(B) requirements must be met.Hamilton v. Ohio Sav. Bank (1998), 82 Ohio St.3d 67, 71.
 {¶ 56} This court must determine whether relators have met the seven requirements by a preponderance of the evidence. Warner, at 94. The burden of establishing that a case may appropriately be treated as a class action rests upon the party or parties bringing suit. Burrell v.Sol Bergman Estate Jewelers, Inc. (1991), 77 Ohio App.3d 766, 771.
 {¶ 57} The magistrate finds that relators have met the requirements by a preponderance of the evidence. The class is clearly identifiable, the named representatives are members of the class, at approximately 45, the class is numerous enough to make joinders impractical, there are questions of law common to the class, the claims/defenses of the representative are common to those of the class, the representative parties can and are fairly and adequately protecting the intensity of the class, and the prosecution of separate actions by the individual members creates a risk of inconsistent adjudications. As such, this matter should be certified as a class action.
 {¶ 58} Based on the foregoing, it is the magistrate's decision that this matter be certified as a class action and that relators have established that the commission abused its discretion. A writ of mandamus should issue ordering respondent commission to pay relators TTD compensation at their full weekly wage.